**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ANDY EUGENE MASLIN A/K/A ANDY EUGENE
MASLIN, III, *individually and as a shareholder of*
*Angel Eyes Produce, Inc., on behalf of himself and*
*all other shareholders of Angel Eyes Produce, Inc.*
*similarly situated, and in the right of Angel Eyes*
*Produce, Inc.*, BROOKS ALAN WASHBURN,
*individually and as a shareholder of Angel Eyes*
*Produce, Inc. on behalf of himself and all other*
*shareholders of Angel Eyes Produce, Inc. similarly*
*situated, and in the right of Angel Eyes Produce, Inc.*,
MASBRO LLC, and WASLIN LLC,

8:18-cv-01309
(MAD/DJS)

                        **Plaintiffs,**

          **vs.**

ANGEL EYES PRODUCE, INC., JAMES P. MASSA,
and SUSTAINABLE ESSENTIALS ENTERPRISES LLC,

                        **Defendants.**

_____

APPEARANCES:                        OF COUNSEL:

**THE STEELE LAW FIRM, P.C.**          **KIMBERLY A. STEELE, ESQ.**
949 County Route 53
Oswego, New York 13126
Attorneys for Plaintiffs

**THE LAW OFFICES OF JASON J.**          **JASON J. REBHUN, ESQ.**
**REBHUN, P.C.**
225 Broadway, 38th Floor
New York, New York 10007
Attorneys for Defendants

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiffs commenced this patent infringement action on November 7, 2018, challenging a

patent assignment agreement and alleging that Defendants have been improperly profiting from a

product that Plaintiffs Maslin and Washburn invented. *See* Dkt. No. 1 at ¶ 16. Defendants moved

to dismiss the action, claiming that Plaintiffs have failed to adequately plead any of their claims, and that Plaintiffs' claims are time-barred. *See* Dkt. No. 14-1 at 6. For the following reasons, Defendants' motion is granted and the case is dismissed.

## II. BACKGROUND

**A.     Facts**

### *1. The Parties*

Plaintiff Andy Maslin is the founder, majority shareholder, and director of Angel Eyes Produce, Inc. ("AEP"), a company that sells organic produce. *See* Dkt. No. 1 at ¶¶ 1, 21-24. Plaintiff Brooks Washburn is a shareholder of AEP. *Id.* at ¶ 2. Maslin and Washburn (together, the "Inventors") developed a unique plant husbandry method (hereinafter, the "Invention") that was granted United States Patent Number 8,112,936 (hereinafter, the "Patent"). *Id.* at ¶¶ 17-18.

On or about May 27, 2010, AEP hired Defendant James Massa as Chief Executive Officer ("CEO"). *Id.* at ¶ 26. Soon thereafter, Maslin discovered that Massa had spent substantially all of the company's capital on non-business expenses. *Id.* at ¶ 30 (alleging that Massa ran "unnecessary hotel charges and exorbitant meals and bar tabs"); *id.* at ¶ 31 (alleging that Massa embezzled approximately $300,000 from AEP). Additionally, AEP's board of directors learned of several problems with Massa's performance. *Id.* at ¶ 32 (alleging that Massa "physically grabbed and violently shook a visitor" on AEP's premises); *id.* at ¶ 33 (alleging that Massa proposed a recapitalization plan in an attempt to dilute the company shares). On November 12, 2010, the AEP directors voted to terminate Massa. *Id.* at ¶ 36.

According to Plaintiffs, Massa has refused to accept his termination and continues to hold himself out as the CEO of AEP. *Id.* at ¶¶ 37-40. Specifically, Massa responded by convening an improper special shareholder meeting where he obtained the resignations of certain board

members and elected new directors to the board, who reaffirmed his position as CEO through May 31, 2011. *Id.* at ¶¶ 37, 38. Massa also allegedly seized control of AEP's bank account, removed AEP's records, computer equipment, and shipping and growing containers from New York, and let the Patent application "nearly expire[]" so that he could apply for a new patent on the same Invention through his own entity. *Id.* at ¶¶ 41-43.

### 2. Assignment Agreement

According to the Complaint, on or about January 10, 2011, Massa induced Maslin, Washburn, and Masbro LLC ("Masbro") to execute a Release, Revocation and Assignment (hereinafter, the "Assignment Agreement") which assigned the Patent, as well as certain "proprietary information, trade secrets, and knowhow," to AEP. *Id.* at ¶ 45; Dkt. No. 1-2 at 4-15. Specifically, Massa represented to Maslin and Washburn that (1) "the Invention would be used to benefit AEP," and (2) "Maslin and Washburn would derive a benefit in the form of dividends and profits from AEP being allowed to use the Invention." *See* Dkt. No. 1 at ¶¶ 46-47. Plaintiffs claim that these representations were fraudulent because Massa did not intend to do either of those things, but instead planned to divert the Invention from AEP to himself and his company, Sustainable Essentials Enterprises LLC ("SEE"). *Id.* at ¶¶ 51-54. Finally, Plaintiffs allege that Massa "falsely represented his authority to act on behalf of AEP," because he was no longer CEO of AEP when they executed the Assignment Agreement. *Id.* at ¶ 55. The Assignment Agreement was not recorded with the United States Patent and Trademark Office ("PTO") until August 22, 2016. *Id.* at ¶ 56.

### 3. Sustainable Essentials Enterprises

SEE is a limited liability company that was established by Massa on or about December 14, 2011. *Id.* at ¶ 48. Plaintiffs claim that Massa attempted to steal AEP's inventors by

allowing them to convert their shares to interests in SEE. *Id.* at ¶ 50. Additionally, Plaintiffs

allege that Massa has attempted to, or has actually, sold, assigned, or licensed the Patent to SEE,

or other prospective licensees, and that SEE has in turn, "made, used, offered to sell, or sold the

apparatus and processes as identified in the Patent." *Id.* at ¶¶ 67-68; *see also id.* at ¶ 69 (claiming

that "Massa actively induced AEP and/or SEE, among possibly other entities to which Massa may

have purported to license or assign the Invention, to make, use, offer to sell, or sell the Invention

or components thereof").

### 4. The Waslin Assignment

On September 11, 2012, Maslin and Washburn executed an Assignment of Rights, Title

and Interest in Invention (hereinafter, the "Waslin Assignment"), which assigned the Invention to

Waslin LLC ("Waslin"), and was recorded with the PTO on September 14, 2012. *Id.* at ¶¶ 57-58;

Dkt. No. 1-3 at 2-4. Plaintiffs claim that Waslin is the legitimate assignee of the Invention, and

that Massa has no legal rights to the Invention. *See* Dkt. No. 1 at ¶¶ 61-62.

## B. Procedural History

Plaintiffs filed the Complaint on November 7, 2018, alleging patent infringement, unjust

enrichment, conversion, breach of fiduciary duty, and economic espionage. *Id.* at ¶¶ 71-142, 170-

200. Additionally, Plaintiffs request declaratory judgments regarding the ownership rights of the

Patent and Massa's termination as CEO of AEP, and ask for an award of reasonable attorneys'

fees and costs. *Id.* at ¶¶ 153, 163.

On March 21, 2019, Defendants moved to dismiss the action, alleging that Plaintiffs'

claims are time-barred and that the Complaint fails to adequately state a claim upon which relief

may be granted. *See* Dkt. No. 14-1 at 6. Plaintiffs filed their Opposition on March 27, 2019, and

on May 8, 2019, Defendants filed their Reply. *See* Dkt. Nos. 15, 20. The Motion to Dismiss is presently before the Court.

## III. DISCUSSION

### A. Legal Standard

To survive dismissal for failure to state a claim, a party need only present a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned" recitation of the alleged misconduct. *Id.* (citations and quotation omitted). In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

In considering a motion to dismiss, the court may consider documents attached as exhibits to the complaint or incorporated by reference in the complaint, documents that are integral to a plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken. *See Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citations omitted).

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (citing Fed. R. Civ. P. 8(c)(1)).  Still, a defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion "if the defense appears on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1226 (3d ed. 2004) ("[T]he current trend in the cases is to allow [the statute of limitations defense] to be raised by a motion to dismiss under Rule 12(b)(6) when the defect appears on the face of the complaint").  The court may grant a motion to dismiss on statute of limitations grounds only when "there is no factual question as to whether the alleged violations occurred within the statutory period." *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 369 (E.D.N.Y. 2012) (citing *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 468 (S.D.N.Y. 1999)).

## B.    Application

### *1. Fraud*

Although the Complaint does not explicitly bring a cause of action for fraud, as Defendants note, the other claims rely on the allegation that Plaintiffs were fraudulently induced to execute the Assignment Agreement.  *See* Dkt. No. 14-1 at 9.  Still, Defendants argue that the fraudulent inducement claim is time-barred and inadequately pled.  *See id.* at 9-12.  Plaintiffs respond that they have adequately stated a fraud claim because they allege that around the time of the execution of the Assignment Agreement, Massa told Plaintiffs "that the Invention would be used to benefit AEP and that Maslin and Washburn would derive a benefit in the form of dividends and profits from AEP being allowed to use the Invention," even though he intended to use the Invention for his own benefit.  *See* Dkt. No. 15 at 11.

The Court agrees with the parties that the Complaint contains many allegations of fraudulent inducement. *See, e.g.*, Dkt. No. 1 at ¶ 60 (alleging that "by reason of its fraudulent inducement . . ., the [Assignment Agreement] was and is invalid, void, and of no force and effect"); *id.* at ¶ 72 (alleging that the Assignment Agreement "is invalid by virtue of having been fraudulently induced by Massa"); *see also id.* at ¶¶ 16, 84, 93, 96, 122, 149, 192. However, after careful review, the Court finds that Plaintiffs' fraudulent inducement claim must be dismissed.

### a. Statute of Limitations

In New York, a cause of action for fraud "must be brought within six years from the date of the fraud or two years from the time that a plaintiff discovered or could have, with reasonable diligence, discovered the alleged fraud." *Adams Book Co. v. Ney*, No. 97-CV-4418, 2002 WL 31946713, *6 (E.D.N.Y. Dec. 3, 2002) (citations omitted); *see also ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997) (citing N.Y. Civ. Prac. L. § 213(8)). Thus, a plaintiff is placed on "inquiry notice" of the alleged fraud only when the plaintiff is "aware of enough operative facts so that, with reasonable diligence, [he] could have discovered the fraud." *See Lucas-Plaza Hous. Dev. Corp. v. Corey*, 805 N.Y.S.2d 9, 10 (2005) (citation omitted). The defendant, however, "bear[s] a 'heavy burden' in establishing that the plaintiff was on inquiry notice as a matter of law." *Nivram Corp. v. Harcourt Brace Jovanovich, Inc.*, 840 F. Supp. 243, 249 (S.D.N.Y. 1993) (quoting *Phillips v. Kidder, Peabody & Co.*, 782 F. Supp. 854, 859 (S.D.N.Y. 1991)).

Plaintiffs argue that the Inventors were fraudulently induced to sign the Assignment Agreement in January 2011, but they did not initiate this action until almost eight years later on November 7, 2018. *See* Dkt. No. 1 at 1; Dkt. No. 15 at 11. As shareholders of AEP, Maslin and Washburn would have known about Massa's history of misconduct leading to his termination

before they signed the Assignment Agreement and gave away their rights to the Patent. *See* Dkt. No. 1 at ¶ 36. It is unclear why the Inventors trusted an allegedly terminated CEO with a history of looting their company. At the very least, these suspicious circumstances should have placed the Inventors on inquiry notice that something was not right.

Even if Plaintiffs had not discovered the alleged fraud when they executed the Assignment Agreement in 2011, Plaintiffs allege that they "questioned the validity of the [Assignment Agreement] as early as September 2012." *See id.* at ¶ 57. Therefore, to the extent that the Inventors were fraudulently induced to execute the Assignment Agreement, the Court finds that Plaintiffs could have discovered such fraud, with due diligence, by at least September 2012. *Aldrich*, 52 A.D.3d at 436. Accordingly, the fraudulent inducement claim is time-barred.[1]

### b. Failure to State a Claim

Even if the fraud claim is not time-barred, it must still be dismissed for failure to state a claim. "To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) (citations omitted). Additionally, allegations of fraud must meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b),

---

[1] Defendants' main statute of limitations argument rests on the premise that in Paragraph 76 of the Complaint, Plaintiffs state that they provided actual notice to Defendants that the Assignment Agreement was invalid "as early as July of 2011." *See* Dkt. No. 14-1 at 10 (citing Dkt. No. 1 at ¶ 76). The Court disagrees with this interpretation, especially since such an assertion by Plaintiffs would have been fatal to their fraud allegation. Rather, considering its context, the Court believes that Paragraph 76 is more properly read as: "Massa and SEE's consequent infringement of the Patent on repeated occasions" took place "at least as early as July of 2011." *See* Dkt. No. 1 at ¶ 76.

which requires a party alleging fraud to "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). The Second Circuit has explained that, in order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted).

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, because the court "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations,' . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (citations omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted).

Corporate optimism is actionable as fraud only when the speaker provided "guarantees or . . . specific statements of fact, . . . or if the speaker does not genuinely or reasonably believe them." *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (citations omitted); *see also In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 568-69 (S.D.N.Y. 2007) (finding that statements regarding a company's restructuring and "strong balance sheet" were "optimistic statements of opinion as opposed to fact"). In other words, statements touting the possibility of profits are mere puffery that cannot support allegations of fraud. *See Wang v. Bear*

*Stearns Cos. LLC*, 14 F. Supp. 3d 537, 545 (S.D.N.Y. 2014) (finding that statements that an investment was good and that it was a "great time to invest in the stock" were opinions); *see Newman v. L.F. Rothschild, Unterberg, Towbin*, 651 F. Supp. 160, 163 (S.D.N.Y. 1986) (finding that statements such as "I'm the best in the business," "I'll make money for you," and that the plaintiffs were going to "make good money on new issues" were nothing more than "the common puff of a salesman").

Plaintiffs allege that Massa "represented to Maslin and Washburn that the Invention would be used to benefit AEP," and "that Maslin and Washburn would derive a benefit in the form of dividends and profits from AEP being allowed to use the Invention." *See* Dkt. No. 1 at ¶¶ 46-47. The Court finds that these statements are nothing more than "the common puff of a salesman," which cannot support a fraud claim. *See, e.g.*, *Newman*, 651 F. Supp. at 163. Further, Plaintiffs have not met Rule 9(b)'s heightened pleading requirement for fraud, because they have not specified the exact statements that are allegedly fraudulent, nor have they alleged where and when any of these statements were made. *See Mills*, 12 F.3d at 1175 (listing the specific pleading requirements for fraud). Similarly, the broad allegation that Massa "failed to disclose and/or actively concealed" his history of defrauding other corporations does not meet the specificity requirements for pleading fraud, as the Complaint does not contain any facts to support this assertion. *See* Dkt. No. 1 at ¶ 27.

Moreover, Plaintiffs were not entitled to blindly rely on Massa's promises of profits, and the Complaint does not properly allege that their reliance on those representations was reasonable. *See Banque Arabe*, 57 F.3d at 153. Reasonable reliance entails a duty to investigate the legitimacy of certain statements where the plaintiff is "'placed on guard or practically faced with the facts.'" *See Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006)

(quotation omitted); *see also Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) (holding that where suspicious circumstances "suggest to a reasonably prudent plaintiff that the defendants' representations may be false, and that the plaintiff cannot reasonably rely on those representations," the plaintiff must "make additional inquiry to determine their accuracy" (quotation omitted)).

Plaintiffs allege that Massa was terminated as CEO of AEP in November 2010, but Maslin and Washburn executed the Assignment Agreement with Massa representing AEP as its CEO in January 2011. *See* Dkt. No. 1 at ¶¶ 36, 45. Maslin, as the founder, shareholder, director of AEP and inventor of the Invention, and Washburn, as an AEP shareholder and inventor of the Invention, would surely have known about Massa's termination when they executed the Assignment Agreement. *See id.* at ¶¶ 1, 2, 21-23. Likewise, they must have known the cause for Massa's termination: his inappropriate behavior and spending of over $300,000 of the company's capital on non-business expenses. *See id.* at ¶¶ 29-36. Thus, any statements made by Massa in an attempt to secure the Patent were surrounded by suspicious circumstances that would have triggered a reasonably prudent person to "make additional inquiry to determine their accuracy." *Estate of Warhol*, 119 F.3d at 98. Conversely, Plaintiffs' blind reliance on Massa's statements was completely unreasonable.

Accordingly, the Court finds that the fraudulent inducement claim must be dismissed.

### *2. Patent Infringement*

Next, Plaintiffs allege that since the Assignment Agreement should be invalidated based on fraudulent inducement, Defendants have been infringing on the Patent by using the Invention "to grow produce, and selling or assigning the Patent to SEE and/or other companies." *See* Dkt. No. 1 at ¶¶ 72-85. Moreover, even if the Assignment Agreement is valid, Plaintiffs allege that

Massa was not the CEO of AEP and thus, did not have the "authority to use, sell, transfer, assign, and/or license the Invention." *See id.* at ¶ 74. Defendants argue that the patent infringement claim fails because (1) the Assignment Agreement "definitively undermine[s] any claims of ownership plaintiffs might have in intellectual property that was assigned via a '100% undivided interest' to AEP," (2) the claim is time-barred, and (3) the cause of action has not been adequately pled. *See* Dkt. No. 14-1 at 12-13.

"The right of a patentee to a remedy for patent infringement is created by the patent statute, which provides that '[a] patentee shall have remedy by civil action for infringement of his patent.'" *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1571 (Fed. Cir. 1997) (quoting 35 U.S.C. § 281 (1994)). However, in order to "invoke the jurisdiction of a federal court . . ., the plaintiff must "allege facts that demonstrate that he, and not the defendant, owns the patent rights on which the infringement suit is premised." *Id.* at 1571-72. That allegation of ownership "must have a plausible foundation." *Id.* Determining whether a plaintiff has a right to sue for patent infringement "turns on the proper construction of the assignment agreement, which is a matter of state contract law." *See IMATEC, Ltd. v. Apple Computer, Inc.*, 15 Fed. Appx. 887, 892 (Fed. Cir. 2001) (citation omitted). Here, the Assignment Agreement contains a choice of law provision that provides that the agreement is governed by New York law. *See* Dkt. No. 1-2 at 11.

Under New York contract law, it is well accepted that courts should construe contracts according to the parties' intent as derived from the contracts' unambiguous terms. *See Lockheed Martin Corp. v. Retail Holdings*, *N.V.*, 639 F.3d 63, 69 (2d Cir. 2011). "When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Id.* (citing *South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277 (2005)); *see also IMATEC*, 15 Fed. Appx. at 895 (stating that "[w]here . . . a contract's language is unambiguous and the words are

plain and clear, effect must be given to the intent of the parties as reflected by the express language of the agreement").

Plaintiffs have not adequately alleged that they were fraudulently induced to enter into the Assignment Agreement, nor is there any other reason to invalidate the contract. Accordingly, the Court must accept the Assignment Agreement as plainly indicating the parties' intent, and the language unambiguously assigns the Patent to AEP. *See* Dkt. No. 1-2 at 7 ("Inventors desire to assign 100% undivided interest in said Invention . . . to Angel Eyes Produce, Inc."). The fact that the Waslin Assignment was recorded with the PTO before the Assignment Agreement does not invalidate the agreement. United States patent law provides that, "[a]n interest that constitutes an assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage." 35 U.S.C.A. § 261. However, "[t]o qualify as a subsequent purchaser for value, [the new assignee] must not have been on notice of any prior assignment." *DBA Disbursement Co. v. SJV Food & Beverage Carriers, Inc.*, No. 10-CV-2998, 2011 WL 13305368, *3 (E.D.N.Y. May 5, 2011). Section 261's notice requirement, "'is broader than actual notice, and includes constructive and inquiry notice.'" *Leighton Techs. LLC v. Oberthur Card Sys., S.A.*, No. 04-CV-2496, 2007 WL 2230157, *13 (S.D.N.Y. July 11, 2007) (quoting *Katz v. Lear Siegler, Inc.*, No. 91-CV-1094, 1993 WL 262564, *4 (Fed. Cir. July 12, 1993)). "[C]onstructive notice may be based on any fact within the knowledge or means of knowledge, of the purchaser of the unrecorded assignment, and which fact should logically lead him, upon inquiry to a knowledge of the existence and purport of that assignment itself." *Katz*, 1993 WL 262564, at *4 (quotation omitted).

Here, the Court finds that Waslin knew, or at the very least was on notice, that the Patent had been assigned to AEP when it executed the Waslin Assignment. This case involves individuals and companies that are connected to the Inventors. Although the Complaint does not specifically allege Waslin's connection to the other Plaintiffs, the New York State Department of State businesses database lists Plaintiff Washburn as Waslin's primary contact. *See* https://appext20.dos.ny.gov/corp_public.[2] Moreover, the company's name, "Waslin," appears to be a combination of the inventors' names, which further suggests an affiliation. Finally, Waslin was founded only four days prior to the execution of the Waslin Assignment, and Plaintiffs allege that they executed that assignment specifically because they "questioned the validity of the [Assignment Agreement]." *See* Dkt. No. 1 at ¶ 57. Thus, the Court finds that Waslin knew, or had the means to know, that AEP had purchased the Patent through the unrecorded Assignment Agreement. *Katz*, 1993 WL 262564, at *4. Therefore, the Assignment Agreement is not voided by the fact that it was recorded after the Waslin Assignment.

Because the Assignment Agreement stands, Plaintiffs no longer own the Patent and do not have standing to bring a claim for patent infringement. *See Jim Arnold Corp.*, 109 F.3d at 1571-72; *see also Salazar v. Buono*, 559 U.S. 700, 711 (2010) (in order for a plaintiff to have standing, the plaintiff "must have 'alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction'" (quotation omitted) (emphasis in original)). Accordingly, the patent infringement cause of action is dismissed.

### 3. Unjust Enrichment

---

[2] In deciding a motion to dismiss, the Court may take judicial notice of public documents or matters of public records. *See, e.g.*, *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) (collecting cases); *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011) (judicial notice of "publicly available documents" permitted).

14

"To prevail on a claim for unjust enrichment, the moving party must show that the defendant received money from or was otherwise enriched by the plaintiff to the defendant's benefit and, pursuant to principles of equity and good conscience, the defendant should not retain what plaintiff seeks to recover." *Deutsche Asset Mgmt., Inc. v. Callaghan*, No. 01-CV-4426, 2004 WL 758303, *11 (S.D.N.Y. Apr. 7, 2004) (citing, *inter alia*, *Clark v. Daby*, 751 N.Y.S.2d 622, 623 (3d Dep't 2002)). "[C]laims for unjust enrichment seek restitution and are based upon theories of quasi-contract." *Id.* (citing *Matter of Estate of Witbeck*, 666 N.Y.S.2d 315, 317 (3d Dep't 1997)). However, because "[a] quasi-contract is one implied by law, where none in fact exists," such relief is only available in the absence of an enforceable written contract between the parties which governs the same subject matter. *Id.* (citations omitted).

Plaintiffs claim that Defendants have been unjustly enriched because (1) Massa improperly solicited the use of the Invention, proprietary information, trade secrets, and knowhow by obtaining the Assignment Agreement; (2) Plaintiffs were not adequately compensated for the Invention; and (3) Defendants have benefitted from using the Invention at Plaintiffs' expense. *See* Dkt. No. 1 at ¶¶ 96-110. Unfortunately for Plaintiffs, unjust enrichment is only available in the absence of an enforceable written contract between the parties on the same subject matter. *See Deutsche Asset Mgmt., Inc.*, 2004 WL 758303, at *11. Here, the Assignment Agreement clearly covers the parties' legal rights to the Invention, the parties do not disagree about the terms of the agreement, and Plaintiffs have not properly alleged anything to invalidate that agreement. *Cf. GlaxoSmithKline LLC v. Beede*, No. 1:13-CV-00001, 2014 WL 896724, *7 (N.D.N.Y. Mar. 6, 2014) (permitting both the contract claim and unjust enrichment claim to proceed where the parties "disagree[d] as to the terms and even existence of a valid contract"). Accordingly, the unjust enrichment claim must be dismissed.

### 4. Conversion

"According to New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 360 Fed. Appx. 179, 180 (2d Cir. 2010) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth. of El Paso*, 87 N.Y.2d 36, 44 (1995) (internal quotation marks and other citation omitted) (alterations in original)).  Plaintiffs' conversion allegations rest on a claim that the Assignment Agreement is invalid because it was fraudulently induced.  *See* Dkt. No. 1 at ¶¶ 118-22.  As discussed above, Plaintiffs have not properly alleged the fraudulent inducement claim, and the Assignment Agreement clearly and unambiguously assigns the Patent rights to AEP.  As such, Plaintiffs do not own the Patent.  Thus, they cannot bring a conversion claim against Defendants for the unauthorized assumption and use of that right, and the conversion claim must be dismissed.

### 5. Breach of Fiduciary Duty

Plaintiffs allege that Massa owed a fiduciary duty to AEP that he breached by (1) embezzling $300,000 from AEP, (2) "refus[ing] to acknowledge his termination as CEO of AEP and divid[ing] AEP into competing factions," (3) seizing items such as corporate records, corporate equipment, and shipping and growing containers, (4) taking control of AEP's bank account, (5) attempting to seize control of the Invention by letting the patent almost expire, and (6) offering to sell or license (or actually selling or licensing) the Patent for little to no consideration.  *Id.* at ¶¶ 171-78.  Plaintiffs requests $2,000,000 in damages for the breach, plus interest and attorneys' fees and costs.  *Id.* at ¶¶ 180-82.

As an initial matter, any alleged breaches that occurred before November 7, 2015 are time-barred.  When a plaintiff seeks money damages, as Plaintiffs do here, the cause of action for

breach of fiduciary duty is subject to a three-year statute of limitations. *Malmsteen v. Berdon, LLP*, 369 Fed. Appx. 248, 249 (2d Cir. 2010) (citing *Weiss v. T.D. Waterhouse*, 847 N.Y.S.2d 94, 95 (2d Dep't 2007)). Generally, the claim accrues at the time of the breach. *Id.* (citing *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 166 n.3 (1st Dep't 2003)). Therefore, the Court will not consider any of the alleged conduct that occurred around Massa's termination as part of the breach of fiduciary duty claim.

After reviewing the remaining factual allegations, the Court finds that the breach of fiduciary duty claim must be dismissed for failure to state a claim. To establish a breach of fiduciary duty, a plaintiff must prove "the existence of a fiduciary relationship, misconduct by the [defendant], and damages directly caused by the [defendant's] misconduct." *Margrabe v. Sexter & Warmflash, P.C.*, 353 Fed. Appx. 547, 549 (2d Cir. 2009) (citation omitted). Under New York law, "[a] corporate officer or director generally owes a fiduciary duty only to the corporation over which he exercises management authority, and any breach of fiduciary duty claims arising out of injuries to the corporation in most cases may only be brought by the corporation itself or derivatively on its behalf." *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 224-25 (S.D.N.Y. 2005) (citing *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985) (stating that "allegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may derivatively sue but not individually") (other citations omitted)); *see also Koal Indus. Corp. v. Asland, S.A.*, 808 F. Supp. 1143, 1163 (S.D.N.Y. 1992) ("Because fiduciary duties generally are said to be owed to a corporation and not to a particular stockholder, the enforcement of such duties must be in the name of the corporation" (citations omitted)).

Here, Plaintiffs purport to bring this action "on behalf of [themselves] and all other shareholders of Angel Eyes Produce, Inc. similarly situated, and in the right of Angel Eyes Produce, Inc." *See* Dkt. No. 1 at ¶¶ 1-2. Because Massa owed fiduciary duties only to AEP and not the individual shareholders, the breach of fiduciary duty claim can only be brought derivatively. *See Lemgruber*, 385 F. Supp. 2d at 224-25. "'[A] shareholder seeking assert a claim on behalf of a corporation must first exhaust intracorporate remedies by making a demand on the directors to obtain the action desired.'" *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004) (quotation omitted). However, demand is excused if the plaintiff shows it would be "futile," "useless" or "unavailing." *Kaster v. Modification Sys., Inc.*, 731 F.2d 1014, 1017 (2d Cir. 1984), *abrogated on other grounds by Espinoza*, 797 F.3d 229 (citation omitted). "Accordingly, Rule 23.1 of the Federal Rules of Civil Procedure requires the complaint in a derivative action to 'state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and . . . the reasons for not obtaining the action or not making the effort.'" *Id.* (citing Fed. R. Civ. P. 23.1(b)(3)).

Here, the Complaint falls far short of Rule 23.1's pleading requirement. Plaintiffs do not allege that they made any effort to obtain the desired action from AEP's board of directors, nor do they provide any reason for failure to make a demand upon the board. Accordingly, the breach of fiduciary duty claim is dismissed for failure to state a claim.

Moreover, although Plaintiffs claim to bring this case "in the right of Angel Eyes Produce, Inc.," they have also named AEP as a defendant. As a matter of common sense, a plaintiff cannot sue himself. *See In re Morreale*, No. BR 13-27310, 2015 WL 3897796, *13 (Bankr. D. Colo. June 22, 2015) (finding it "both a legal truism and a matter of common sense" that a debtor cannot

sue himself); *see also Cole v. Reynolds*, 18 N.Y. 74, 77 (1858) (finding that a plaintiff's action at law could not be sustained where the plaintiff company and defendant company shared the same partner, because "[a] man cannot sue himself; and . . . all the members of a firm must unite in bringing an action").  Thus, the Court rejects Plaintiffs' assertion that they brought this action "in the right of Angel Eyes Produce."

### 6. Economic Espionage

The Economic Espionage Act (the "EEA"), as amended by the Defend Trade Secrets Act of 2016, provides a federal civil cause of action for owners of misappropriated trade secrets.  *See Xavian Ins. Co. v. Marsh & McLennan Cos., Inc.*, No. 18-CV-8273, 2019 WL 1620754, *4 (S.D.N.Y. Apr. 16, 2019) (citing Pub. L. No. 114-153).  Information is a "trade secret" if "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3).

Plaintiffs bring a claim under the EEA, arguing that the Invention is a trade secret that Massa has misappropriated to his own benefit and to AEP's detriment.  *See* Dkt. No. 1 at ¶¶ 184-98.  However, Plaintiffs do not own the Invention, and, as discussed *supra*, have not sued derivatively on AEP's behalf.  *See* Pub. L. No. 114-153 (granting owners of trade secrets the right to bring a civil action); *see also Salazar*, 559 U.S. at 711 (standing requires a plaintiff to allege a personal stake in the controversy).  Regardless, the claim would fail even if it were brought by the proper party, because the Invention has a United States patent, *see* Dkt. No. 1 at ¶ 18, and it is well established that an inventor who has patented his product has not taken reasonable measures to keep such information secret, *see Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1

F. Supp. 3d 224, 269 (S.D.N.Y. 2014), *aff'd sub nom.* 610 Fed. Appx. 69 (2d Cir. 2015) (noting that a patent application "destroy[s] any secrecy that inhered in the alleged trade secret" before the patent, because patents are "'intended to be widely disclosed'" (citations and quotation omitted); *see also Timely Prods. Corp. v. Arron*, 523 F.2d 288, 304 (2d Cir. 1975) (holding that a trade secret was "disclosed by [the plaintiff] himself when his patent issued"). Thus, the economic espionage claim is dismissed.

### 7. Declaratory Judgments

The Declaratory Judgment Act provides, in part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[A] court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *See In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993); *Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, *19 n.30 (E.D.N.Y. Sept. 7, 2013) ("A plaintiff cannot maintain a claim for a declaratory judgment where the underlying substantive claim has been dismissed since the Declaratory Judgment Act ("DJA") only created a procedural mechanism and not an independent cause of action").

Here, Plaintiffs request declaratory judgments about (1) the ownership rights of the Patent and (2) the termination of Massa. However, Plaintiffs have failed to allege any claim that would allow the Court to conclude that Plaintiffs own the Patent, and Massa's employment status at AEP is not a part of the controversy before this Court. *See* 28 U.S.C. § 2201(a) (requiring a case of actual controversy for the issuance of a declaratory judgment). Accordingly, the claims for declaratory judgments are dismissed.

### *8. Attorneys' Fees and Costs*

Finally, Plaintiffs ask for reasonable attorneys' fees and costs. *See* Dkt. No. 1 at ¶¶ 164-69. Upon reviewing the Complaint, the Court finds that this request is tied to the patent infringement claim and the breach of fiduciary duty claim. *See id.* at ¶ 168 (citing statutes that allow "an award of reasonable attorneys' fees and costs to a prevailing party in patent infringement litigation in exceptional cases and in a shareholder's derivative action"); *see also* Dkt. No. 14-1 at 13 n.1 (Defendants arguing that the fee request "appears to derive entirely from plaintiffs' patent infringement claim"). Therefore, because Plaintiffs have not adequately alleged either claim, the request for attorneys' fees and costs is dismissed.

## C.     Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "'An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).'" *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). "Therefore a proposed amendment is not futile if it states a claim upon which relief can be granted." *Waltz v. Bd. of Educ. of Hoosick Falls Cent. Sch. Dist.*, No. 12-CV-0507, 2013 WL 4811958, *4 (N.D.N.Y. Sept. 10, 2013).

Plaintiffs argue that if their fraud claim is not sufficiently alleged, "the proper

course would be for the Court to grant the Plaintiffs leave to amend the Complaint rather than simply dismissing it outright." *See* Dkt. No. 15 at 10-11 (citing *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007)).  Here, however, amendment would be futile.  The fraudulent inducement claim, even if properly alleged, would still be time-barred, *see Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) (stating that amendment is likely to be futile where the proposed claims would be barred by the applicable statute of limitations), and the Assignment Agreement precludes any unjust enrichment or conversion claims.  Similarly, creative pleading cannot save Plaintiffs' breach of fiduciary duty and economic espionage claims from dismissal.

Moreover, pursuant to Rule 2(A)(ii) of the Individual Rules and Practices of Hon. Mae A. D'Agostino, in order to avoid dismissal of this action, Plaintiffs were required to amend their Complaint prior to the Motion to Dismiss being filed or cross-move to amend their Complaint in conjunction with their response to the motion.  *See* Dkt. No. 5 (providing the parties with notice of the Court's Individual Rules and Practices).  As Plaintiffs did neither of these things, dismissal without leave to amend is appropriate.

Accordingly, the Complaint is dismissed with prejudice.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' Motion to Dismiss (Dkt. No. 14) is **GRANTED** in its entirety; and the Court further

**ORDERS** that the Complaint (Dkt. No. 1) is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 17, 2019
        Albany, New York

Mae A. D'Agostino
U.S. District Judge